**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

FILED
U.S. DISTRICT COURT
W.D.

**WILLIAM COLSTON,**

**Plaintiff,**

**v.**

**CITY OF BUFFALO et al.,**

**Defendant.**

**DECISION AND ORDER**
**01-CV-0070**

This matter having come before the Court on defendants' motion for summary judgment (Docket #33), and the Court having reviewed the papers submitted by the parties and having considered the oral arguments of counsel, it is hereby,

**ORDERED** that defendants' motion for summary judgment is **denied**.

## Discussion

Plaintiff claims that on March 26, 2000, members of the Buffalo Police Department stopped his car without probable cause, falsely arrested and imprisoned him and subjected him to the intentional infliction of emotional distress. Plaintiff also alleges municipal liability based on claims that the Buffalo Police Department's failure to train, supervise and discipline its officers "encouraged ongoing racial profiling and harassment in the City of Buffalo." See Complaint at ¶47. Defendants deny engaging in any racial profiling and allege that the stop of plaintiff's car

was legal and based solely on his failure to come to a complete stop at an intersection.

As to summary judgment with respect to the individual defendants, defense counsel concedes that the threshold issue of whether plaintiff ran the stop sign must be resolved in order to determine whether the police officer defendants had probable cause to stop and detain the plaintiff. This Court agrees, particularly because all the remaining causes of actions and alleged damages flow from the legality of the initial stop of plaintiff's vehicle. Defendants allege that plaintiff violated the Vehicle and Traffic law by engaging in a "rolling stop." Plaintiff denies he violated the law and insisted at his deposition that he came to a "complete stop." In considering this motion, the court must "draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment." In re State Police Litigation, 88 F.3d 111, 123 (2nd Cir. 1996). Given this standard, the material issue of fact as to whether there was in fact probable cause to stop plaintiff because he ignored a stop sign precludes the granting of summary judgment.

Defendants also allege that "plaintiff's claims of false arrest and false imprisonment are barred by the doctrine of Qualified Immunity." Affidavit of Craig D. Hannah, Esq. (Docket #33) at §38.

> An arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without

> probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether probable cause test was met.

Lee v. Sandberg, 136 F.3d 94, 102 (2nd Cir. 1997) (quotations omitted). During oral argument, defense counsel conceded that the right not to be arrested without probable cause is a clearly established right for purposes of qualified immunity analysis, Cook v. Sheldon, 41 F.3d 73, 78 (2d Cir. 1994), and hence the issue here devolves on whether the defendants' actions were "objectively unreasonable at the time they were taken." Lee v. Sandberg, 136 F.3d at 102.

Here, the "objective reasonableness" issue hinges on the disputed factual issue of whether the plaintiff violated New York's traffic laws by failing to come to a compete stop at an intersection controlled by a stop sign. Thus, because adjudication of the affirmative defense of qualified immunity requires resolution of defendants' claim that plaintiff failed to stop at the stop sign, clearly a genuinely disputed issue of material fact, summary judgment is inappropriate. See Bingham v. City of Manhattan Beach, 341 F.3d 939, 947-948 (9th Cir. 2003) (traffic stop lacking reasonable suspicion violated clearly established right under Fourth Amendment precluding grant of qualified immunity against officer who conducted stop).

Finally, the municipal defendant seeks summary judgment on plaintiff's third cause of action which alleges a policy or

practice of racial profiling based on failure to train, discipline and supervise police officers. The existence of a policy or custom which violates constitutional rights may be demonstrated by "evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993) (quoting Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)). See City of Canton v. Harris, 489 U.S. 378, 388-392 (1989) (insufficient police training may provide basis for municipal liability where failure to train amounts to deliberate indifference to rights of persons with whom police come into contact). See generally Diane M. Allen, Annotation, Liability of Supervisory Officials and Governmental Entities for Having Failed to Adequately Train, Supervise, or Control Individual Peace Officers Who Violate Plaintiff's Civil Rights Under 42 USCA § 1983, 70 A.L.R. Fed. 17 (1984).

Despite defendants vehement denial of a race based policy or practice, plaintiff has developed evidence in the record sufficient to defeat summary judgment. Plaintiff particularly relies on the deposition testimony of Fred D. Young, a captain in the Buffalo Police Department who is a supervisor in the "E" precinct where plaintiff was stopped. In his deposition, Captain Young, a twenty year veteran of the Buffalo Police Department, described what he characterized as a serious "problem" in the "E" district involving

African-American residents complaining that while driving in the district, they were being unlawfully stopped, searched, harassed and called derogatory names (e.g., "nigger") by members of the police department. Captain Young's concern resulted in an October 22, 1999 Memorandum directed to the Buffalo Commissioner of Police in which Young recommended "corrective action" against officers who are the subject of repeated complaints of professional misconduct[1] and closer "supervision on the first platoon." See Exhibit "D" annexed to April 27, 2004 Affirmation of T. Andrew Brown, Esq., Docket #36. According to Young, he was never informed of any official action ("corrective" or otherwise) taken in response to the concerns expressed in his memorandum to the Commissioner.

Whether plaintiff will be able to prove that his allegedly false arrest was the direct result of inadequate training, supervision, discipline or an unconstitutional policy of stopping African-Americans practiced by the Buffalo Police Department as alleged in the third cause of action of his complaint certainly remains to be seen. But, viewing the evidence in the light most favorable to plaintiff, as I must in the context of a summary judgment motion, plaintiff's proof raises genuine issues of fact

---

[1] Clark testified that he specifically recalled citizen complaints being made against two of the individual officers sued here. Indeed, Clark stated initiated a counseling meeting with one of the officers because "his name was popping up on too many complaints" of illegal stops and searches. See Clark Deposition at pp. 60-71.

that can not be rejected simply because of the municipal defendant's general denial of racial profiling, no matter how strenuously that denial is asserted. See generally David A. Harris, The Stories, the Statistics, and the Law: Why "Driving While Black" Matters, 84 Minn. L. Rev. 265 (December 1999). Consequently, the municipal defendant's motion for summary judgment must be denied.

## Conclusion

For the reasons stated herein, defendants' motion for summary judgment[2] (Docket #33) is **denied**.

SO ORDERED.

JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

Dated: June 28, 2004
Rochester, New York

[2] During oral argument defense counsel agreed with the Court that since counsel was relying on documents outside the pleadings, the motion papers should be properly be considered under Rule 56 and not Rule 12 of the Federal Rules of Civil Procedure.